**LEWIS BRISBOIS BISGAARD & SMITH LLP**
DANA ALDEN FOX, SB# 119761
  E-Mail: Dana.Fox@lewisbrisbois.com
TONY M. SAIN, SB# 251626
  E-Mail: Tony.Sain@lewisbrisbois.com
TORI L. N. BAKKEN, SB# 329069
  E-Mail: Tori.Bakken@lewisbrisbois.com
ABIGAIL J. R. McLAUGHLIN, SB# 313208
  E-Mail: Abigail.McLaughlin@lewisbrisbois.com
633 West 5th Street, Suite 4000
Los Angeles, California 90071
Telephone: 213.250.1800
Facsimile: 213.250.7900

Attorneys for Defendants,
CITY OF ANAHEIM, JORGE
CISNEROS, PAUL DELGADO, BRETT
HEITMAN, KENNETH WEBER, and
CATALIN PANOV

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO LOPEZ, individually; JOHANNA LOPEZ, individually; M.R., by and through his guardian ad litem, April Rodriguez, individually and as successor in interest to Brandon Lopez; B.L. and J.L., by and through their guardian ad litem Rachel Perez, individually and as successor in interest to Brandon Lopez; S.L., by and through his guardian ad litem, Rocio Flores, individually and as successor in interest to Brandon Lopez,<br><br>Plaintiffs,<br><br>vs.<br><br>CITY OF ANAHEIM; CITY OF SANTA ANA; DAVID VALENTIN; JORGE CISNEROS; PAUL DELGADO; BRETT HEITMAN; KENNETH WEBER; CAITLIN PANOV; DOES 1-10,<br><br>Defendants. | Case No. 8:22-cv-1351-JVS-ADS<br>[*Hon. James V. Selna, Dist. Judge; Hon. Autumn D. Spaeth, M. Judge*]<br><br>**NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**<br><br>*Filed Concurrently with Statement of Undisputed Facts; Declaration of Abigail J.R. McLaughlin; Notice of Lodging; and [Proposed] Order*<br><br>Date:    August 12, 2024<br>Time:    1:30 p.m.<br>Crtrm.:  10C<br><br>FPTC Date:        September 9, 2024<br>Trial Date:        September 17, 2024 |

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

**TO PLAINTIFFS AND THEIR COUNSEL OF RECORD:**

NOTICE IS HEREBY GIVEN THAT, on the 12th day of August, 2024, at 1:30 p.m., in Courtroom 10C of the above-captioned Court, located at the Ronald Reagan Federal Building and United States Courthouse, 411 West Fourth Street, Santa Ana, California 92701, Defendants CITY OF ANAHEIM, JORGE CISNEROS, PAUL DELGADO, BRETT HEITMAN, KENNETH WEBER, and CATALIN PANOV ("Anaheim Defendants") will move this Court for summary judgment, or partial summary judgment, on the remaining operative claims in Plaintiffs' Second Amended Complaint for Damages [Dkt. 71], upon the following grounds:

1.    Defendants JORGE CISNEROS, PAUL DELGADO, BRETT HEITMAN, KENNETH WEBER, AND CATALIN PANOV are entitled to judgment on Plaintiffs ANTONIO LOPEZ and JOHANNA LOPEZ ("Plaintiffs") cause of action under 42 U.S.C. § 1983 for interference with familial relationships.

2.    Defendants CITY OF ANAHEIM and JORGE CISNEROS are entitled to judgment on Plaintiffs' cause of action under 42 U.S.C. § 1983 for municipal liability and supervisory liability for unconstitutional custom or policy.

3.    Defendants CITY OF ANAHEIM and JORGE CISNEROS are entitled to judgment on Plaintiffs' cause of action under 42 U.S.C. § 1983 for municipal liability and supervisory liability for ratification.

4.    Defendants CITY OF ANAHEIM and JORGE CISNEROS are entitled to judgment on Plaintiffs' cause of action under 42 U.S.C. § 1983 for municipal liability and supervisory liability for failure to train.

5.    Defendants are entitled to judgment on Plaintiff JOHANNA LOPEZ's cause of action under California law for negligent infliction of emotional distress (bystander negligence).

6.    Defendants JORGE CISNEROS, PAUL DELGADO, BRETT HEITMAN, KENNETH WEBER, AND CATALIN PANOV are entitled to judgment on Plaintiffs' claim for punitive damages.

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

This motion for judgment or partial summary judgment is made pursuant to Fed. R. Civ. P. 56, and is based upon this notice and memorandum of points and authorities filed and served herewith; the statement of uncontroverted facts and conclusions of law, the declaration of attorney Abigail J.R. McLaughlin and exhibits filed and served concurrently; the notice of lodging of non-paper exhibits filed and served concurrently; the proposed judgment lodged and served concurrently; the papers and records on file in this action; and upon such additional evidence and argument as may be properly before this Court at the time of the hearing.

This motion is made following the conference of counsel pursuant to C.D. Local Rule 7-3, which was initiated via written correspondence from Defendants' counsel on July 1, 2024 and completed via call between the parties' counsel on July 9, 2024.

DATED: July 15, 2024            LEWIS BRISBOIS BISGAARD & SMITH LLP


By:    _/s/ Abigail J.R. McLaughlin_
       DANA ALDEN FOX
       TONY M. SAIN
       TORI L. N. BAKKEN
       ABIGAIL J. R. McLAUGHLIN
       Attorneys for Defendants,
       CITY OF ANAHEIM, JORGE
       CISNEROS, PAUL DELGADO, BRETT
       HEITMAN, KENNETH WEBER, and
       CATALIN PANOV


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# **TABLE OF CONTENTS**

**Page**

1.   INTRODUCTION AND SUMMARY OF THE ARGUMENT......................1

2.   STATEMENT OF UNCONTROVERTED FACTS. .......................................2

    A.   Mr. Lopez Is Suspected of Vehicular Theft and Flees Traffic Stop, Leading APD Officers On Vehicular Pursuit. ........................................2

    B.   Mr. Lopez's Stand Off With Law Enforcement. ...................................2

    C.   APD SWAT Officers Attempt to Detain Mr. Lopez, Who Proceeds to Run Towards APD SWAT Officers While Pointing a Black Object At Officers With Mr. Lopez's Right Hand, Believed To Be A Gun. .........................................................................................4

3.   ANAHEIM OFFICER DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' CLAIM FOR INTERFERENCE WITH FAMILIAL RELATIONSHIPS. ...........................................................5

    A.   Anaheim Defendant Officers' Uses of Force During the Incident Did Not Shock the Conscience. ..............................................................5

    B.   Anaheim Officer Defendants Are Entitled to Qualified Immunity. .......................................................................................................7

4.   DEFENDANTS CITY OF ANAHEIM AND JORGE CISNEROS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' CLAIMS FOR MUNICIPAL AND SUPERVISORY LIABILITY..........................................9

    A.   As There is No Evidence of a Constitutional Violation by Anaheim Officer Defendants, Defendants City of Anaheim and Jorge Cisneros are Not Liable to Plaintiffs Under *Monell*. ..................9

    B.   Additionally, Plaintiffs Cannot Identify Any Specific Policy, Practice, or Custom That Was the "Moving Force" Behind a Constitutional Violation....................................................................10

    C.   Plaintiffs Cannot Establish Ratification.................................................11

    D.   Plaintiffs Cannot Establish a Program-Wide Inadequacy in Training at APD.....................................................................................12

5.   DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFF JOHANNA LOPEZ'S CLAIM FOR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS BECAUSE SHE DID NOT SEE THE SHOOTING & WAS THUS NOT A BYSTANDER.....................................13

6.   PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES LACKS MERIT..........................................................................................................15

7.   CONCLUSION. ............................................................................................16

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

142659527.1

i

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

4

## <u>CASES</u>

5

*Alexander v. City and Cnty. of San Francisco,* 29 F.3d 1355 (9th Cir. 1994) .......... 13

6

*Ashcroft v. al-Kidd,* 563 U.S. 731 (2011) ................................................................... 8

7

*Barnes v. City of Pasadena*, 508 Fed. Appx. 663 (9th Cir. 2013) ............................... 9

8

*Blankenhorn v. City of Orange,* 485 F.3d 463 (9th Cir. 2007) ................................. 13

9

*Caldwell v. City of S.F.,* 2020 U.S. Dist. LEXIS 242004 (N.D. Cal. Dec. 23, 2020) ....................................................................................................................... 12

10

*Christie v. Iopa,* 176 F.3d 1231 (9th Cir. 1999) ....................................................... 12

11

*City of Los Angeles v. Heller,* 475 U.S. 796 (1986) ................................................. 10

12

*City of Oklahoma City v. Tuttle,* 471 U.S. 808 (1985) ............................................. 11

13

*City of St. Louis v. Praprotnik,* 485 U.S. 112 (1988) ......................................... 11, 12

14

*Clouthie* ..................................................................................................................... 12

15

*Clouthier v. Cnty. of Contra Costa,* 591 F.3d 1232 (9th Cir. 2010) ............. 10, 11, 13

16

*Dang v. Cross,* 422 F.3d 800 (9th Cir. 2005) ........................................................... 16

17

*District of Columbia v. Wesby,* 583 U.S. 48 (2018) ................................................ 7, 8

18

*Easley v. City of Riverside*, 89 F.3d 851 (9th Cir. 2018) ........................................... 9

19

*Foster v. City of Indio,* 908 F.3d 1204 (9th Cir. 2018) ............................................... 6

20

*George v. Morris,* 736 F.3d 829 (9th Cir. 2015) ........................................................ 8

21

*Gillette v. Delmore,* 979 F.2d 1342 (9th Cir. 1992) ................................................. 12

22

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) ...................................... 6

23

*Graham v. Connor*, 490 U.S. 386 (1989) ................................................................... 9

24

*Kisela v. Hughes,* 584 U.S. 100 (2018) ...................................................................... 8

25

*Krouse v. Graham*, 19 Cal. 3d 59 (1977) ................................................................. 14

26

*Lockett v. Cnty. of Los Angeles,* 977 F.3d 737 (9th Cir. 2020). ............................... 11

27

*Long v. City & Cnty. of Honolulu,* 511 F.3d 901 (9th Cir. 2007) ............................... 8

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

*McSherry v. City of Long Beach,* 584 F.3d 1129 (9th Cir. 2009) .............................10

*Ochoa v. City of Mesa,* 26 F.4th 1050 (9th Cir. 2022) ..........................................5, 6

*Pearson v. Callahan,* 555 U.S. 223 (2009) ...................................................8

*Peck v. Montoya,* 51 F.4th 877 (9th Cir. 2022) .................................................7

*Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986) ........................................11, 12

*Porter v. Osborn,* 546 F.3d 1131 (9th Cir. 2008) ..............................................6

*Provencio v. Vazquez,* 258 F.R.D. 626 (E.D. Cal. 2009) .......................................5

*Ra v. Superior Court,* 154 Cal.App.4th 142 (2007) ...........................................15

*Reichle v. Howards,* 566 U.S. 658 (2012) ....................................................7

*Reynolds v. Cnty. of San Diego,* 858 F. Supp. 1064 (S.D. Cal. 1994) ........................9

*Saucier v. Katz,* 533 U.S. 194 (2001) .......................................................8

*Scott v. Henrich,* 39 F.3d 912 (9th Cir. 1994) ..............................................10

*See Rabinovitz v. City of Los Angeles,* 287 F.Supp.3d 933 (C.D. Cal. 2018)...........12

*Sheehan v. City and Cnty. of San Francisco,* 743 F.3d 1211 (9th Cir. 2014)...........12

*Smith v. Wade,* 461 U.S. 30 (1983) .........................................................16

*Thing v. La Chusa,* 48 Cal.3d 644 (1989) ...................................................14

*Torres v. City of Madera,* 648 F.3d 1119 (9th Cir. 2011) ....................................9

*Trevino v. Gates,* 99 F.3d 911 (9th Cir. 1996) .............................................11

*Van Ort v. Estate of Stanewich,* 92 F.3d 831 (9th Cir. 1996)................................10

*Waid v. Cnty. of Lyon,* 87 F.4th 383 (9th Cir. 2023)........................................8

*Ward v. City of San Jose,* 967 F.2d 280 (9th Cir. 1991) ....................................16

*Wilkinson v. Torres,* 610 F.3d 546 (9th Cir. 2010)..........................................6



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

## MEMORANDUM OF POINTS AND AUTHORITIES

### 1.     INTRODUCTION AND SUMMARY OF THE ARGUMENT.

This Court should issue summary judgment for Defendants in this police/civil rights case about the fatal shooting of reportedly gun-armed car-theft suspect Brandon Lopez after he led police on a pursuit where, after a lengthy barricade/standoff with Anaheim PD and Santa Ana PD, Lopez fled from his vehicle, initially running away from officers, and then, despite commands to the contrary, ran toward officers holding an object that officers believed to be a gun, for the following reasons:

First, Plaintiffs Antonio Lopez and Johanna Lopez's ("Plaintiffs" and decedent's parents) claim for interference with familial relations fails as a matter of law. Defendants Paul Delgado, Brett Heitman, Kenneth Weber, and Catalin Panov ("Anaheim Officer Defendants") did not act with a purpose to harm Plaintiffs' decedent Brandon Lopez unrelated to law enforcement objectives. Rather, when confronted with a reportedly armed individual who had engaged in a vehicular pursuit, then ran towards officers holding an object believed to be a gun, the Anaheim Officer Defendants appropriately used lethal force in self-defense (while shouting "gun").

Second, Plaintiffs' claims for *Monell* and supervisory liability fail as a matter of law. As the Anaheim Officer Defendants did not violate Mr. Lopez's constitutional rights during the incident, Plaintiffs cannot establish *Monell* and supervisor liability, which requires an underlying constitutional violation to have occurred in the underlying incident. Further, Plaintiffs lack any material basis for their allegation that Defendants City of Anaheim and City of Anaheim Police Chief Jorge Cisneros implemented a specific policy, practice, or custom that was the "moving force" behind a constitutional violation, that there was a program-wide inadequacy in training at the City of Anaheim Police Department ("APD"), and/or that they ratified the Anaheim Officer Defendants' conduct during the incident.

Third, Plaintiff Johanna Lopez's claim for negligent infliction of emotional distress based on a bystander liability theory fails as a matter of law because Plaintiff

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

Johanna Lopez was not present at the scene of the incident and was not aware that the Anaheim Officer Defendants were harming Mr. Lopez at the time of the incident (put simply, she was *not* a contemporary eyewitness to the shooting event).

Fourth and finally, Plaintiffs are not entitled to punitive damages because the Anaheim Officer Defendants did not act with malice during the incident. Summary judgment should thus be granted.

## 2.   STATEMENT OF UNCONTROVERTED FACTS.

### A.   Mr. Lopez Is Suspected of Vehicular Theft and Flees Traffic Stop, Leading APD Officers On Vehicular Pursuit.

On September 28, 2021, at about 3:00 p.m., APD Officer Joseph Gross completed a stolen vehicle report regarding a black Dodge Charger. [SUF 1.] Brandon Lopez was identified as the suspect regarding the theft of the black Dodge Charger. [SUF 2.] Mr. Lopez had an active warrant for armed robbery . [SUF 3.]

APD officers located the stolen Dodge Charger in Santa Ana, California and, at about 5:15 p.m., tried to conduct a traffic stop. [SUF 4.] The driver of the stolen vehicle, later confirmed to be Mr. Lopez, fled the stop: leading officers on a vehicle pursuit for approximately 30 minutes through Tustin, Irvine, and Santa Ana. [SUF 5.] During the vehicle pursuit, Mr. Lopez ran red lights and stop signs, and he drove into oncoming traffic. [SUF 6.] Mr. Lopez was also involved in a traffic collision, but he drove away from the scene of the collision. [SUF 7.] This information was radioed to the APD officers, along with his criminal history/warrants. [SUF 8.]

At about 5:49 p.m., Mr. Lopez's vehicle became disabled/immobilized on partially constructed train tracks, after driving into a construction zone. [SUF 9.]

### B.   Mr. Lopez's Stand Off With Law Enforcement.

APD Officers arrived to execute a high risk vehicle stop on Mr. Lopez and the stolen vehicle. [SUF 10.] However, for several hours, Mr. Lopez would not comply with commands to exit the vehicle or to surrender. [SUF 11.] APD officers continued to try to negotiate with Mr. Lopez to surrender peacefully for approximately 3 hours:

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

trying to convince Mr. Lopez to exit his vehicle and giving commands in both English and Spanish; but Mr. Lopez remained in the vehicle.  [SUF 12.]  Mr. Lopez also responded to commands by shaking his head, indicating that he would not exit the stranded vehicle.  [SUF 13.]

At a certain point, law enforcement officers saw Mr. Lopez inside of the Dodge Charger with what they believed to be a gun in his right hand.  [SUF 14.]  The officers also observed Mr. Lopez smoking something from a foil and through a pipe, suggesting that Mr. Lopez was taking illegal drugs.  [SUF 15.]  Officers also reported seeing Mr. Lopez making furtive movements, such as reaching under the front passenger seat with both hands and talking on a cell phone.  [SUF 16.]  Officers also observed Mr. Lopez take a pen from the center console and write something, which was discovered to be a suicide note after the incident.  [SUF 17.]  Mr. Lopez then placed his vehicle's floor mats over the car's windows: to obscure officers' views. [SUF 18.]  This information was relayed to the officers responding to the scene, who viewed Lopez's conduct as indicating a threatening intent.  [SUF 19.]

As a result, APD SWAT was called to respond to the scene and took control of the scene at approximately 9:07 p.m.  [SUF 20.]

At approximately 9:34 p.m., APD SWAT was informed that Mr. Lopez had advised a family member that he intended to commit "suicide by cop": which raised the officers concerns that he might try to seriously injure someone in order to provoke the officers to shoot him.  [SUF 21.]  Shortly thereafter, notwithstanding the obstruction of the mats in the car windows, Mr. Lopez was seen shifting to the back seat of the vehicle.  [SUF 22.]  The officers at the scene, including the defendant officers, viewed the totality of Lopez's aforementioned conduct up to that point as threatening and potentially pre-assaultive.  [SUF 23.]

///

///

///

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

142659527.1                                        3
                        DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**C.   APD SWAT Officers Attempt to Detain Mr. Lopez, Who Proceeds to Run Towards APD SWAT Officers While Pointing a Black Object At Officers With Mr. Lopez's Right Hand, Believed To Be A Gun.**

APD SWAT members then lined up near the Dodge Charger in the following order: Defendant Officer Brett Heitmann, Defendant Sergeant Paul Delgado, non-defendant APD Officer Ricky Reynoso (armed with a less-lethal 40 mm weapon), Defendant Officer Catalin Panov, Defendant Sergeant Kenneth Weber, and non-defendant APD K-9 Officer Brandon Mullins.  [SUF 24.]

At 10:00 p.m., officers deployed a flash-bang on the hood of the Dodge Charger and a chemical agent akin to pepper spray through the rear windshield.  [SUF 25.] Mr. Lopez then finally emerged from the rear door driver's side of the vehicle and he began fleeing from the SWAT officers.  [SUF 26.]  Officers commanded Mr. Lopez to put his hands up.  [SUF 27.]  Ignoring the officers' commands, Mr. Lopez stopped running *away* from the officers, instead turning *towards* the SWAT officers and quickly pointed at them with a black object in his right hand while beginning to run in the officers' direction.  [SUF 28.]  Seeing this, Defendant Officer Panov responded by shouting, "Gun, gun, gun."  [SUF 29.]

In that split-second moment, the APD SWAT officers present believed that Lopez was about to fire a gun at them.  [SUF 30.]  Accordingly, Defendant Officer Heitman fired 4 to 5 shots from his rifle; Defendant Officer Panov also concurrently fired 10 shots from his handgun; Defendant Sergeant Weber also concurrently fired 5 shots from his handgun; and Defendant Sergeant Delgado concurrently fired four shots from his rifle. [SUF 31.]  All shots were fired in about 2.2 seconds.  [SUF 32.]

Mr. Lopez then fell to the ground with his arms under his front torso.  [SUF 33.]  Because the APD SWAT officers present could not see where the black object they perceived as a gun was now located, and because Mr. Lopez had just threatened them and appeared to be ignoring additional commands, Officer Reynoso deployed a 40 mm (non-lethal) foam-tipped round against Mr. Lopez's lower body: to determine



LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

his responsiveness and to redress the threat they still believed Mr. Lopez posed: as officers on the scene believed that there was a firearm under Lopez's body.  [SUF 34.]  However, Mr. Lopez did not move in response to the 40mm deployment.  [SUF 35.]  Seeing this, APD SWAT officers then approached, handcuffed, and searched Mr. Lopez.  [SUF 36.]

At around 10:06 p.m., APD SWAT officers then determined that Mr. Lopez was deceased at the scene.  [SUF 37.]  Additionally, a firearm was not found in Mr. Lopez's possession.  [SUF 38.]  After the shooting, the black object was determined to be a black pouch; however, at all times before shots were fired, the defendant officers had believed that object held by Mr. Lopez to be a gun that he was raising to fire at them.  [SUF 39.]

**3.     ANAHEIM OFFICER DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' CLAIM FOR INTERFERENCE WITH FAMILIAL RELATIONSHIPS.**

**A.     Anaheim Defendant Officers' Uses of Force During the Incident Did Not Shock the Conscience.**

"To prevail on a Fourteenth Amendment claim arising out of the loss of a familial relationship, a plaintiff must show that Defendant's conduct shocks the conscience."  *Provencio v. Vazquez*, 258 F.R.D. 626, 640 (E.D. Cal. 2009); *Ochoa v. City of Mesa*, 26 F.4th 1050, 1056 (9th Cir. 2022) ("A claim asserting that police officers violated these Fourteenth Amendment rights during a police shooting must show that the officers' conduct shocks the conscience.") (cleaned up).

In determining whether the Anaheim Officer Defendants' conduct "shocks the conscience," the Court must first decide which standard of culpability applies.  The two standards are whether the Anaheim Officer Defendants acted with: (1) "deliberate indifference" to the harm they caused decedent; or (2) a "purpose to harm" decedent.  *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir. 2008).  "[T]he deliberate-indifference test applies if the situation at issue 'evolve[d] in a time frame that permits the officer

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

142659527.1

5

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

to deliberate before acting." *Ochoa*, 26 F.4th at 1056 (quoting *Porter*, 546 F.3d at 1137). "Deliberation is not possible if the officers 'encounter[ed] fast paced circumstances presenting competing public safety obligations.'" *Id.* (quoting *Porter* 546, F.3d at 1139). "Deliberation in this context 'should not be interpreted in the narrow, technical sense.'" *Id.* (quoting *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010).) For the purpose-to-harm test to apply, the situation at issue must have "escalate[d] so quickly that the officer [had to] make a snap judgment." *Porter*, 546 F.3d at 1137. This test requires "a more demanding showing that [the officers] acted with a purpose to harm [the decedent] for reasons unrelated to legitimate law enforcement objectives." *Id.* Legitimate objectives can include "arrest, self-protection, and protection of the public." *Foster v. City of Indio*, 908 F.3d 1204, 1211 (9th Cir. 2018). Illegitimate objectives include "when the officer 'had any ulterior motives for using force against' the suspect, such as 'to bully a suspect or "get even,"' or when an officer uses force against a clearly harmless or subdued suspect." *Id.* (citations omitted) (quoting *Gonzalez v. City of Anaheim*, 747 F.3d 789, 798 (9th Cir. 2014); *Wilkinson*, 610 F.3d at 554).

Here, the Anaheim Officer Defendants did not have time to deliberate before shooting Mr. Lopez. At the time of the shooting, the Anaheim Officer Defendants knew that in the past few hours Mr. Lopez had: stolen a vehicle; fled a traffic stop; proceeded to drive erratically; appeared to have a gun; and failed to peacefully exit his vehicle in surrender, after hours of commands to do so. [SUF 1-13, 17, 27-28.] Thus, when Mr. Lopez abruptly exited his vehicle after the chemical agent deployments, when he then failed to follow commands, and then suddenly changed directions so that he was running with a black object believed to be a weapon pointed *at* Anaheim Officer Defendants, there was no time to deliberate. [SUF 33-38.] The urgency of that moment – caused by Mr. Lopez's failure to follow police commands – forced the officers to react instantly, without deliberation; thus <u>the purpose-to-harm test is appropriate in this matter</u>. *See, e.g.*, *Peck v. Montoya*, 51 F.4th 877, 893-894



(9th Cir. 2022) (though much of encounter was spent in a "stalemate", where only a few minutes elapsed between observation of weapon and opening of fire and mere seconds separated commands and fatal shots, purpose-to-harm standard applied).

There is nothing in the record suggesting that the Anaheim Officer Defendants had an improper purpose to harm.  There is no allegation that the officers sought to bully Mr. Lopez or get even with him.  There is no indication that the officers had prior dealings with Mr. Lopez.  Rather, the Anaheim Officer Defendants acted out a legitimate law enforcement objective: self-protection and protection of the public from an armed man known to have committed crimes and be violent.  Accordingly, because there was no improper purpose to harm here, judgment should be granted for the Anaheim Officer Defendants on Plaintiffs' cause of action for Fourteenth Amendment interference with familial relationships.

**B.     Anaheim Officer Defendants Are Entitled to Qualified Immunity.**

Qualified immunity protects government officials from suit unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  *District of Columbia v. Wesby,* 583 U.S. 48, 62-63 (2018) (quoting *Reichle v. Howards,* 566 U.S. 658, 664 (2012)).  Here, in light of the undisputed material facts, neither prong is satisfied.

First, as discussed above, the Anaheim Officer Defendants did not violate Plaintiffs' Fourteenth Amendment rights.

Second, even if the Anaheim Officer Defendants had violated Plaintiffs' Fourteenth Amendment rights, they would still be entitled to qualified immunity because they did not violate clearly established law.  To deny qualified immunity, not only must a constitutional right be violated, but that right must be "clearly established" at the time.  *Wesby,* 583 U.S. at 62-63.  To be clearly established, there need not be "a case directly on point, but existing precedent must have placed the statutory or constitutional question beyond debate."  *Ashcroft v. al-Kidd,* 563 U.S. 731, 741 (2011).  While in the "rare" case a clearly established right may be obvious,


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

142659527.1

7

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

clearly establishing a right usually requires "'controlling authority' or a robust 'consensus of cases of persuasive authority.'" *Wesby,* 583 U.S. at 63, 64 (quoting *Ashcroft,* 563 U.S. at 741-42). The burden is on Plaintiffs to make the showing that "the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood he was violating it." *Kisela v. Hughes,* 584 U.S. 100, 105 (2018); *Waid v. Cnty. of Lyon,* 87 F.4th 383, 388, 389 (9th Cir. 2023).

It is well-settled that lethal force is justified if an officer has "probable cause to believe that [a] suspect poses a significant threat of death or serious physical injury to the officer or others." *Long v. City & Cnty. of Honolulu,* 511 F.3d 901, 906 (9th Cir. 2007) (cleaned up). Reasonableness also does not "always require[] officers to delay their fire until a suspect turns his weapon on them." *George v. Morris,* 736 F.3d 829, 838 (9th Cir. 2015). "If the person is armed—or reasonably suspected of being armed—a furtive movement, a harrowing gesture, or serious verbal threat might create an immediate threat." *Id.* These principles apply even when officers are reasonably mistaken about the nature of the threat. "Officers can have reasonable, but mistaken, beliefs as to the facts establishing the existence of" an immediate threat, and "in those situations courts will not hold that they have violated the Constitution." *Saucier v. Katz,* 533 U.S. 194, 206 (2001). Thus, the Constitution even allows for officer's action that resulted from a reasonable "mistake of fact." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009). When an officer's "use of force is based on a mistake of fact, we ask whether a reasonable officer would have or should have accurately perceived that fact." *Torres v. City of Madera,* 648 F.3d 1119, 1124 (9th Cir. 2011).

The Anaheim Officer Defendants' mistaken belief that Mr. Lopez possessed a dangerous weapon was reasonable and they were justified in the use of deadly force when Mr. Lopez appeared to be about to shoot the Anaheim Officer Defendants with a black object after being told he had a gun. At the time that Mr. Lopez exited the Dodge Charger, the officers faced a "tense, uncertain, and rapidly evolving"


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

142659527.1

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

circumstance. *Graham v. Connor*, 490 U.S. 386, 397 (1989). Mr. Lopez had not complied with repeated commands to exit the car, resulting in the use of flash-bang and chemical agent deployment. [SUF 10-12, 24-26.] Then, when Mr. Lopez did exit the car, he again did not comply with commands, instead first running away from and then towards the officers. [SUF 26-28.] Thus, the Anaheim Officer Defendants' use of force was unquestionably reasonable and there was no clearly established law that would have put them on notice that this incident shooting might be unconstitutional. *Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064, 1072 (S.D. Cal. 1994) (citing cases that "support the general principle that an officer may reasonably use deadly force when he or she confronts an armed suspect in close proximity whose actions indicate an intent to attack"), remanded on other grounds, 84 F.3d 1162 (9th Cir. 1996); *see Easley v. City of Riverside*, 89 F.3d 851, 857 (9th Cir. 2018) (finding officer entitled to qualified immunity where officer was concerned about presence of gun, saw suspect grab his waistband, and the suspect pulled an object from his right pants' pocket and threw it away from his body); *Barnes v. City of Pasadena*, 508 Fed. Appx. 663, 665 (9th Cir. 2013) ("Even if an issue of fact existed about the presence of a gun, the determinative issue was whether the officers reasonably believed [suspect] had a gun and posed an immediate threat to safety.").

Accordingly, the Anaheim Officer Defendants are also entitled to qualified immunity as to Plaintiffs' claim for interference with familial relationship.

**4.   DEFENDANTS CITY OF ANAHEIM AND CHIEF JORGE CISNEROS ARE ENTITLED TO JUDGMENT ON PLAINTIFFS' CLAIMS FOR MUNICIPAL AND SUPERVISORY LIABILITY.**

**A.   As There is No Evidence of a Constitutional Violation by Anaheim Officer Defendants, Defendants City of Anaheim and Chief Jorge Cisneros are Not Liable to Plaintiffs Under *Monell*.**

Plaintiffs' claims for municipal liability and supervisory liability for (1) unconstitutional custom or policy; (2) ratification; and (3) failure to train are

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

dependent on Plaintiffs first establishing that the Anaheim Officer Defendants violated Plaintiffs' Fourteenth Amendment due process right to a familial relationship with Mr. Lopez.  In order to state a municipal liability claim, a litigant must allege that they possessed a constitutional right of which they were deprived.  *Van Ort v. Estate of Stanewich,* 92 F.3d 831, 835 (9th Cir. 1996); *see City of Los Angeles v. Heller,* 475 U.S. 796, 799 (1986); *Scott v. Henrich,* 39 F.3d 912, 916 (9th Cir. 1994); *McSherry v. City of Long Beach,* 584 F.3d 1129, 1147 (9th Cir. 2009).

Under the uncontroverted facts, as explained above, since Plaintiffs did not suffer a constitutional injury from the actions of the Anaheim Officer Defendants, Defendants City of Anaheim and Chief Jorge Cisneros are entitled to judgment on all of Plaintiffs' claims for municipal liability and supervisory liability.

## B. Additionally, Plaintiffs Cannot Identify Any Specific Policy, Practice, or Custom That Was the "Moving Force" Behind a Constitutional Violation.

A local government may be held liable "when implementation of its official policies or established customs inflicts the constitutional injury."  *Clouthier v. Cnty. of Contra Costa,* 591 F.3d 1232, 1249 (9th Cir. 2010) (quotation marks omitted), overruled on other grounds by *Castro v. Cnty. of Los Angeles,* 833 F.3d 1060 (9th Cir. 2016.  In order to succeed on a claim based on *Monell* liability, a plaintiff must "prove that (1) he was deprived of a constitutional right; (2) the municipality had a policy; (3) the policy amounted to deliberate indifference to [plaintiff or plaintiff's decedent's] constitutional right; and (4) the policy was the moving force behind the constitutional violation."  *Lockett v. Cnty. of Los Angeles,* 977 F.3d 737, 741 (9th Cir. 2020).  A policy within the meaning of *Monell* exists where official policy makers "consciously" choose a particular course of action or procedure "from among various alternatives."  *City of Oklahoma City v. Tuttle,* 471 U.S. 808, 823 (1985); *Pembaur v. City of Cincinnati,* 475 U.S. 469, 483 (1986) ("municipal liability under § 1983 attaches where – and only where – a deliberate choice to follow a course of action is

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   made from among various alternatives by the official or officials responsible for

2   establishing final policy with respect to the subject matter in question").

3          However, "[l]iability for improper custom may not be predicted on isolated or

4   sporadic incidents; it must be founded upon practices of a sufficient duration,

5   frequency and consistency that the conduct has become a traditional method of

6   carrying out policy." *Trevino v. Gates,* 99 F.3d 911, 918 (9th Cir. 1996).

7          Here, Plaintiffs have no evidence of any specific policy, practice, or custom

8   that was the "moving force" behind the alleged constitutional violation of the

9   Anaheim Officer Defendants' use of lethal force during the incident involving Mr.

10  Lopez. Thus, summary judgment should be granted in favor of Defendants City of

11  Anaheim and Chief Jorge Cisneros as to Plaintiffs' claim for municipal and

12  supervisorial liability for unconstitutional custom or policy.

13         **C.    Plaintiffs Cannot Establish Ratification.**

14         *Monell* liability can also be established "when the individual who committed

15  the constitutional tort was an official with final policy-making authority or such an

16  official ratified a subordinate's unconstitutional decision or action and the basis for

17  it." *Clouthier,* 591 F.3d at 1249.  "If the authorized policymakers approve a

18  subordinate's decision and the basis for it, their ratification would be chargeable to the

19  municipality because their decision is final." *City of St. Louis v. Praprotnik,* 485 U.S.

20  112, 127 (1988).  "There must, however, be evidence of a conscious, affirmative

21  choice" on the part of the authorized policymaker. *Gillette v. Delmore,* 979 F.2d

22  1342, 1347 (9th Cir. 1992).  To show *Monell* liability under a ratification theory, the

23  Supreme Court has held that the final policymaker must make a deliberate choice

24  from among various alternatives to follow a particular course of action. *Pembaur,*

25  475 U.S. at 483-84.   The final policymaker must have approved not only the

26  subordinate's decision, but also the basis for it. *See Praprotnik,* 485 U.S. at 127 ("If

27  the authorized policymakers approve a subordinate's decision and the basis for it,

28  their ratification would be chargeable to the municipality because their decision is

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

final."). Accordingly, ratification requires, among other things, knowledge of the alleged constitutional violation." *Christie v. Iopa,* 176 F.3d 1231, 1239 (9th Cir. 1999).

Failure to discipline employees, without more, is insufficient to establish ratification. *Clouthier,* 591 F.3d at 1253-54. "Ratification . . . generally requires more than acquiescence." *Sheehan v. City and Cnty. of San Francisco,* 743 F.3d 1211, 1231 (9th Cir. 2014), *rev'd in part on other grounds,* 575 U.S. 600 (2015). Here, there is no evidence sufficient to support a finding that a final policy maker for Defendant City of Anaheim – Defendant Chief Jorge Cisneros or otherwise -- made a conscious, affirmative choice to approve the Anaheim Defendant Officers' actions during the incident (if such were unconstitutional, which they were not). *See Rabinovitz v. City of Los Angeles,* 287 F.Supp.3d 933, 967 (C.D. Cal. 2018) (granting summary judgment where "[p]laintiff's sole piece of evidence in support of their ratification theory is the uncontroverted fact that [defendant] has never been disciplined" and characterizing such evidence as "woefully inadequate to prove ratification"); *Caldwell v. City of S.F.,* 2020 U.S. Dist. LEXIS 242004, at *54-56 (N.D. Cal. Dec. 23, 2020) (granting summary judgment on a ratification theory where plaintiff did not put forth any evidence indicating the police chief or any other policymaker was aware of the allegedly unconstitutional conduct).

Therefore, Plaintiffs' claim for municipal and supervisorial liability for ratification fails as a matter of law and judgment should be granted on this cause of action accordingly.

### D.   Plaintiffs Cannot Establish a Program-Wide Inadequacy in Training at APD.

Plaintiffs may also establish *Monell* liability when "omissions," including the failure to train employees, "amount to the local government's own official policy." *Clouthier,* 591 F.3d at 1249. To state a failure to train claim, a plaintiff must show "(1) he was deprived of a constitutional right, (2) the City had a training policy that



DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

1  'amounts to deliberate indifference to the [constitutional] rights of the persons' with
2  whom [its police officers] are likely to come into contact, and (3) his constitutional
3  injury would have been avoided had the City properly trained those officers."
4  *Blankenhorn v. City of Orange,* 485 F.3d 463, 484 (9th Cir. 2007) (alterations in
5  original) (internal quotation marks omitted).  "[E]vidence of the failure to train a
6  single officer is insufficient to establish a municipality's deliberate policy."  *Id.*
7  "[A]bsent evidence of a 'program-wide inadequacy in training,' any shortfall in a
8  single officer's training 'can only be classified as negligence on the part of the
9  municipal defendant - a much lower standard of fault than deliberate indifference.'"
10  *Id.* at 484-85 (quoting *Alexander v. City and Cnty. of San Francisco,* 29 F.3d 1355,
11  1367 (9th Cir. 1994)).

12      Here, there is no evidence that APD inadequately trained its officers throughout
13  its program.  Rather, APD's policies clearly demonstrate that APD trains its officers
14  to act in accordance to the appropriate legal standard, including, but not limited to,
15  the factors to determine the reasonableness of force and when lethal force should be
16  used.  [SUF 40.]  Summary judgment should also be granted in favor of Defendants
17  Defendants City of Anaheim and Chief Jorge Cisneros as to Plaintiffs' claim for
18  municipal and supervisorial liability for failure to train on this basis.

19  **5.    DEFENDANTS ARE ENTITLED TO JUDGMENT ON PLAINTIFF**
20  **JOHANNA LOPEZ'S CLAIM FOR NEGLIGENT INFLICTION OF**
21  **EMOTIONAL DISTRESS BECAUSE SHE DID NOT SEE THE**
22  **SHOOTING & WAS THUS NOT A BYSTANDER.**

23      The California Supreme Court has established a three-part test which must be
24  satisfied in order for a plaintiff to state a cause of action for "bystander" negligent
25  infliction of emotional distress, as Plaintiff Johanna Lopez alleges here: "In the
26  absence of physical injury or impact to the plaintiff himself, damages for emotional
27  distress should be recoverable <u>only</u> if the plaintiff: (1) is closely related to the injury
28  victim; (2) is present at the scene of the injury-producing event at the time it occurs

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1   and is then aware that it is causing injury to the victim; and (3) as a result suffers
2   emotional distress beyond that which would be anticipated in a disinterested witness."
3   *Thing v. La Chusa*, 48 Cal.3d 644, 647 (1989) (emphasis added).  Absent immediate
4   witness of the injury-producing event, recovery is precluded.  *Id.* at 647-648, 669.

5       In other words, the emotional distress must occur "as a result" of a plaintiff's
6   presence at the injury-producing event and *contemporaneous* awareness that the event
7   is causing injury to the victim.  A plaintiff may not recover for all emotional distress
8   suffered as a result of the victim's injury.  Instead, the plaintiff may recover *only* for
9   the emotional distress suffered as a result of plaintiff's on scene witness and awareness
10  of the injury-causing event.  *See Krouse v. Graham*, 19 Cal. 3d 59, 77-78 (1977)
11  (husband could recover for the emotional injury suffered as the "direct emotional
12  impact of his sensory and contemporaneous observance of the accident," but not for
13  any injury caused from his grief and sorrow over the loss of his wife or his feelings
14  of anger and retribution).

15      Here, **Plaintiff Johanna Lopez admits that she did not *see* any aspect of the**
16  **shooting incident**; rather, she alleges that she *heard* gunshots and *assumed* that Mr.
17  Lopez was being injured and/or killed at that time.  [SUF 41.]  Thus, the second
18  element of Plaintiff Johanna Lopez's emotional distress claim is absent: as she was
19  unaware the event was causing injury to Mr. Lopez, rather, she merely speculatively
20  assumed such to be the case.  [*Id.*]

21      "Although a plaintiff may establish presence at the scene through nonvisual
22  sensory perception, someone who *hears* an accident but does not then *know* it is
23  causing injury to a relative *does not have a viable bystander claim for negligent*
24  *infliction of emotional distress*, even if the missing knowledge is acquired moments
25  later."  *Ra v. Superior Court*, 154 Cal.App.4th 142, 149 (2007) (cleaned up) (emphasis
26  added).  Thus, "the absence of a contemporaneous sensory awareness of the causal
27  connection between the injury-producing event and the resulting injury precludes
28  recovery."  *Id.* (cleaned up).


LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

"It is the traumatic effect of the [contemporaneous] perception of the infliction of the injury on a closely related person (whether visual or not) that is actionable, not the observation of the consequences of the occurrence or the contemporaneous perception of endangerment, which, while potentially stressful, is insufficient to cause legally cognizable harm." *Id.* at 152 (cleaned up). Thus, absent a reasonable *certainty* that Mr. Lopez was being injured at the time of the incident, what Plaintiff Johanna Lopez experienced at that time was simply fear and speculative assumption. "Although the emotional distress caused by that fear was no doubt real and substantial (as was the distress resulting from the subsequently acquired knowledge [of the injury]), it is not compensable in a bystander claim." *Id.* Accordingly, because Plaintiff Johanna Lopez has no material evidence to demonstrate that she was reasonably *certain* that Mr. Lopez was injured at the time she heard gunshots on the date of incident, her claim for negligent infliction of emotional distress fails as a matter of law and judgment should be granted for Defendants.

**6. PLAINTIFFS' REQUEST FOR PUNITIVE DAMAGES LACKS MERIT.**

To obtain punitive damages, a plaintiff must prove that a defendant's actions were malicious, oppressive, or in reckless disregard of the plaintiffs' rights. *Dang v. Cross,* 422 F.3d 800, 810 (9th Cir. 2005). The Supreme Court determined that punitive damages are available in a § 1983 action only when a defendant's conduct is shown to be motivated by evil motive or intent or when it involves reckless or callous indifference to the federally protected rights of others. *Smith v. Wade,* 461 U.S. 30, 51 (1983). Where there is no evidence that a § 1983 defendant acted with evil intent, there is no legal right to punitive damages. *Ward v. City of San Jose,* 967 F.2d 280, 286 (9th Cir. 1991). Here, there is no evidence the Anaheim Officer Defendants acted with evil intent; judgment on this claim is thus proper.

///

///

15

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1

**7.     CONCLUSION.**

2

   Accordingly, for the foregoing reasons, the Court should grant summary

3

judgment in favor of the Defendants in this action.

4

5

DATED:  July 15, 2024          LEWIS BRISBOIS BISGAARD & SMITH LLP

6

7

8

                                By:  ____/s/ Abigail J.R. McLaughlin____

9

                                     DANA ALDEN FOX
                                     TONY M. SAIN

10

                                     TORI L. N. BAKKEN
                                     ABIGAIL J. R. McLAUGHLIN

11

                                Attorneys for Defendants,

12

                                CITY OF ANAHEIM, JORGE
                                CISNEROS, PAUL DELGADO, BRETT

13

                                HEITMAN, KENNETH WEBER, and
                                CATALIN PANOV

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

# FEDERAL COURT PROOF OF SERVICE
## LOPEZ, ANTONIO, et al. v. CITY OF ANAHEIM, et al.
### Case No. 8:22-cv-1351

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

At the time of service, I was over 18 years of age and not a party to the action. My business address is 633 West 5th Street, Suite 4000, Los Angeles, CA 90071. I am employed in the office of a member of the bar of this Court at whose direction the service was made.

On July 15, 2024, I served the following document(s):  NOTICE OF MOTION AND MOTION BY DEFENDANTS FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT

I served the documents on the following persons at the following addresses (including fax numbers and e-mail addresses, if applicable):

### SEE ATTACHED SERVICE LIST

The documents were served by the following means:

☒ (BY COURT'S CM/ECF SYSTEM)  Pursuant to Local Rule, I electronically filed the documents with the Clerk of the Court using the CM/ECF system, which sent notification of that filing to the persons listed above.

I declare under penalty of perjury under the laws of the United States of America and the State of California that the foregoing is true and correct.

Executed on July 15, 2024, at Los Angeles, California.

/s/ Corinne Taylor
Corinne Taylor

142659527.1

1

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW

1
2

**SERVICE LIST**
**LOPEZ, ANTONIO, et al. v. CITY OF ANAHEIM, et al.**
**Case No. 8:22-cv-1351**

3
4
5
6
7

BURRIS, NISENBAUM, CURRY & LACY **LLP**
JOHN L. BURRIS, Esq. (SBN 69888)
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile: (510) 839-3882
john.burris@johnburrislaw.com

**ATTORNEYS FOR PLAINTIFFS:**
Antonio Lopez, Johanna Lopez, & S.L. by and through his guardian ad litem Rocio Flores

8
9
10
11
12
13
14
15

BURRIS, NISENBAUM, CURRY & LACY **LLP**
DEWITT M. LACY, Esq. (SBN 258789)
JULIA N. QUESADA, Esq. (SBN 337872)
LENA P. ANDREWS, Esq. (SBN 342471)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, California 90212
Telephone: (310) 601-7070
Facsimile: (510) 839-3882
dewitt@bncllaw.com
julia.quesada@bncllaw.com
lena.andrews@bncllaw.com

**ATTORNEYS FOR PLAINTIFFS:**
Antonio Lopez, Johanna Lopez, & S.L. by and through his guardian ad litem Rocio Flores

16
17
18
19
20
21
22

Gregg M. Gaudet, Assistant City Attorney
City of Anaheim
200 South Anaheim Boulevard, Suite 356
Anaheim, CA 92805
Telephone: (714) 765-5169
gaudet@anaheim.net
RFabela@anaheim.net
KPelletier@anaheim.net
MMerrill@anaheim.net
TMatthews@anaheim.net

**ATTORNEYS FOR DEFENDANTS:**
City of Anaheim

23
24
25
26
27
28

LEWIS
BRISBOIS
BISGAARD
& SMITH LLP
ATTORNEYS AT LAW