**BURRIS, NISENBAUM, CURRY & LACY LLP**
JOHN L. BURRIS, Esq. (SBN 69888)
Airport Corporate Centre
7677 Oakport Street, Suite 1120
Oakland, California 94621
Telephone: (510) 839-5200
Facsimile:  (510) 839-3882
john.burris@johnburrislaw.com

**BURRIS, NISENBAUM, CURRY & LACY LLP**
DeWITT M. LACY, Esq. (SBN 258789)
JULIA N. QUESADA, Esq. (SBN 337872)
LENA P. ANDREWS, Esq. (SBN 342471)
9701 Wilshire Blvd., Suite 1000
Beverly Hills, California 90212
Telephone: (310) 601-7070
Facsimile:  (510) 839-3882
dewitt@bncllaw.com
julia.quesada@bncllaw.com
lena.andrews@bncllaw.com

Attorneys for Plaintiff
Antonio Lopez, Johanna Lopez, & S.L. by and through his guardian ad litem
Rocio Flores

## UNITED STATE DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTONIO LOPEZ, individually; JOHANNA LOPEZ, individually; M.R., by and through his guardian ad litem, April Rodriguez, individually and as successor in interest to Brandon Lopez; B.L. and J.L., by and through their guardian ad litem Rachel Perez, individually and as successors in interest to Brandon Lopez; S.L., by and through his guardian ad litem, Rocio Flores, individually and as successor in interest to Brandon Lopez,<br><br>          Plaintiff,<br><br>     vs. | Case No.: 8:22-cv-01351-JVS-ADS<br><br>*(Honorable James V. Selna; Magistrate Judge Autumn D. Spaeth)*<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**<br><br>*(Filed concurrently with Plaintiffs' Statement of Additional Material Facts; Plaintiffs' Statement of Genuine Disputes of Material Fact; Plaintiffs' Statement of* |

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

CITY OF ANAHEIM, a municipal corporation; CITY OF SANTA ANA, a municipal corporation; DAVID VALENTIN, individually and in his official capacity as the Chief of Police for the CITY OF SANTA ANA Police Department; JORGE CISNEROS, individually and in his official capacity as the Chief of Police for the CITY OF ANAHEIM Police Department; PAUL DELGADO, individually and in his official capacity as an officer for the CITY OF ANAHEIM Police Department; BRETT HEITMAN; KENNETH WEBER, individually and in his official capacity as an officer for the CITY OF ANAHEIM Police Department; BRETT HEITMAN; CAITLIN PANOV, individually and in her official capacity as an officer for the CITY OF ANAHEIM Police Department; BRETT HEITMAN, individually and in his official capacity as an officer for the CITY OF ANAHEIM Police Department; BRETT HEITMAN; DOES 1-10, individually and in their official capacity as law enforcement officers for the CITY OF ANAHEIM Police Department and CITY OF SANTA ANA Police Department,,

     Defendants.

*Evidentiary Objections; Declaration of Lena P. Andrews and attached Exhibits)*

Date: August 12, 2024
Time: 1:30 p.m.
Crtrm.: 10C

FPTC Date: September 9, 2024
Trial Date: September 17, 2024

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

1

## **Table of Contents**

2   MEMORANDUM OF POINTS AND AUTHORITIES ........................................................1

3      I.      INTRODUCTION ................................................................................1

4      II.     STATEMENT OF FACTS .....................................................................2

5      III.    ARGUMENT .......................................................................................6

6              A.    Standard of Review .................................................................6

7              B.    Fourteenth Amendment...........................................................7

8                    1.    The Defendant Officers had Time to Deliberate........................8

9                    2.    The Defendant Officers were Deliberately Indifferent ............10

10                   3.    The Defendant Officers Acted with a Purpose to Harm ..........11

11                         i.    Decedent was Unarmed and did not Pose a
                                 Threat ..............................................................11

12                         ii.   Defendants Created the Perceived Emergency ............13

13                   4.    Mistakes of Fact must be Determined by a Jury .....................14

14                   5.    Qualified Immunity Should be Denied ...................................15

15                         i.    Qualified Immunity is Premature...................................15

16                         ii.   It was Clearly Established at the Time of the
                                 Incident that Deadly Force was not Appropriate ..........16

17                         iii.  Defendants' Authority is Distinguishable.................17

18             C.    Negligent Infliction of Emotional Distress ("NIED") ..........18

19     IV.     CONCLUSION .................................................................................21

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard,  Suite  1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR
PARTIAL SUMMARY JUDGMENT**

# **Table of Authorites**

## **RULES**

Fed. R. Civ. P. 56(a)................................................................................................ 6

## **UNITED STATES SUPREME COURT CASES**

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) ...................................... 6

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ......................................................... 15

*Pearson v. Callahan*, 555 U.S. 223 (2009)....................................................... 15

*Scott v. Harris*, 550 U.S. 372 (2007) .......................................................... 7, 13

*Tennessee v. Garner*, 471 U.S. 1 (1985) ......................................................... 17

## **NINTH CIRCUIT CASES**

*A.D. v. California Highway Patrol*, 712 F.3d 446 (9th Cir. 2013) ...................... 16

*Bingue v. Prunchak*, 512 F.3d 1169 (9th Cir.2008)......................................... 13

*Branscum v. San Ramon Police Dept.*, 606 Fed.Appx. 860 (9th Cir. 2015)...... 7, 13

*Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321 (9th Cir. 1991)............. 16

*Easley v. City of Riverside*, 89 F.3d 851 (9th Cir. 2018) ................................. 18

*Estate of Lopez v. Gelhaus,* 871 F.3d 998 (9th Cir. 2017) ............................... 10

*George v. Morris*, 736 F.3d 829 (9th Cir. 2013)............................................. 16

*Gonzalez v. City of Anaheim*, 747 F.3d 789 (9th Cir. 2014) ............................ 17

*Harris v. Roderick,* 126 F.3d 1189 (9th Cir. 1997)......................................... 16

*N.E.M. v. City of Salinas,* 761 Fed.Appx. 698 (9th Cir. 2019) ......................... 16

*Porter v. Osborn*, 546 F.3d 1131 (9th Cir. 2008) ............................... 7, 8, 11, 13, 14

*Scott v. Henrich*, 39 F.3d 912 (9th Cir.1994)................................................... 6

*Torres v. City of Madera*, 648 F.3d 1119 (9th Cir. 2011)................................. 14

*T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626 (9th Cir. 1987) ..... 6

*Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) ............... 7, 13, 14

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

*Wilkinson v. Torres*, 610 F.3d 546 (9th Cir. 2010) ............................................................... 7, 8

*Zion v. Cnty. of Orange*, 874 F.3d 1072 (9th Cir. 2017)............................................................ 12

**FEDERAL DISTRICT COURT CASES**

*Barragan v. City of Eureka*, No. 15-CV-02070-WHO, 2016 WL 4549130 (N.D. Cal. Sept. 1, 2016) ...................................................................................................... 11, 15

*Bui v. City & Cnty. of S.F.*, 61 F. Supp. 3d 877 (N.D. Cal. 2014) ............................................ 8

*Duenez v. City of Manteca*, 2013 WL 6816375 (E.D. Cal. Dec. 23, 2013) .............................. 8

*F.C. ex rel. Rios v. Cnty. of Los Angeles*, No. CV 10-169 CAS RZX, 2010 WL 5157339 (C.D. Cal. Dec. 13, 2010).......................................................................... 12, 16

*Ramirez v. Cnty. of San Diego*, No. 06 CV 1111JM (JMA), 2009 WL 1010898 (S.D. Cal. Apr. 15, 2009)....................................................................................................... 11

*Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064 (S.D. Cal. 1994) ..................................... 17

*Robertson v. Cnty. of Los Angeles*, No. CV1602761BROSKX, 2017 WL 5643179 at *11 (C.D. Cal. Oct. 17, 2017) ............................................................................... 8, 9

**CALIFORNIA APPELLATE COURT CASES**

*Brown v. Ransweiler*, 171 Cal.App.4th 516 (2009) ................................................................ 18

*Fortman v. Forvaltningsbolaget Insulan AB*, 212 Cal.App.4th 830 (2013). ......................... 19

*Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622 (2013) ............................................................. 18

*Ko v. Maxim Healthcare Servs., Inc.,* 58 Cal. App. 5th 1144 (2020) ..................................... 19

*Wilks v. Hom*, 2 Cal. App. 4th 1264 (1992) ............................................................................ 20

**CALIFORNIA SUPERIOR COURT CASES**

*Krouse v. Graham,* 19 Cal. 3d 59, 76 (1977) .......................................................................... 19

*Thing v. La Chusa*, 48 Cal.3d 644 (1989) ............................................................................... 19

**BURRIS, NISENBAUM, CURRY & LACY LLP**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

**BURRIS, NISENBAUM, CURRY & LACY LLP**
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs ANTONIO LOPEZ ("Mr. Lopez") and JOHANNA LOPEZ ( "Ms. Lopez") ("Plaintiffs") hereby oppose Defendants' Motion for Summary Judgment. This wrongful death, civil rights action arises from Defendants Brett Heitman, Kenneth Weber, Caitlin Panov, and Paul Delgado (collectively "Defendant Officers") wrongful shooting and killing of Decedent Brandon Lopez ("Brandon"), the biological son of Plaintiffs, on September 28, 2021. Plaintiffs contend that the use of deadly force violated their right to a familial relationship with their son and that Ms. Lopez suffered extreme emotional distress because of her contemporaneous perception of the negligent killing of her son.

Defendants contend that they shot Brandon because they believed he was armed with a gun and had pointed that gun at officers after he was forced out of his vehicle by flashbangs. However, Brandon was not armed during the incident; the only thing he had in his hand as he exited the car was a small bag containing a plastic water bottle. Moreover, the video clearly shows that Brandon did not point the object towards anyone; the only movement of the bag was with the natural movement of his arms as he attempted to navigate through the construction zone. Brandon was shot in the back and on the right side of his body approximately thirty (30) times. The Ninth Circuit has long found the use of deadly force under these circumstances to be unconstitutional and a clearly established violation. This Court should find the same.

Plaintiffs' Opposition to Defendants' Motion for Summary Judgment is based on the memorandum of points and authorities; Plaintiffs' Statement of Additional Material Facts ("PAMF"); Plaintiffs' Statement of Genuine Disputes of Material Facts; the Declaration of Lena P. Andrews ("Andrews Decl.") and the exhibits attached thereto; the Court's file in this matter; and on such oral argument presented at the hearing.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

## II.    STATEMENT OF FACTS

### A.  *Brandon was Not Armed*

On September 28, 2021, at approximately 5:15 pm dispatch received a 911 call accusing Brandon Lopez of stealing his then-girlfriend's car. (PAMF-1). City of Anaheim police officers, as well as officers from other jurisdictions, pursued Brandon as he drove into the City of Santa Ana. (PAMF-2). Around the intersection of Santa Ana Blvd. and Bristol St., in Santa Ana, California, Brandon's vehicle became stuck in a railway construction zone. (PAMF-3). An armored vehicle was quickly called to the scene and Brandon's vehicle was surrounded by police vehicles. (PAMF-4). Though officers gave commands for Brandon to exit the vehicle, he remained inside. (PAMF-5). Minutes after Brandon's vehicle became disabled, one Santa Ana police officer aired over the radio that he believed he observed a gun in Brandon's right hand. (PAMF-6).

However, this was a mistake as it is undisputed that Brandon was not armed with any weapons and did not have any firearms in his vehicle. (PAMF-7). There were no additional reports from any officer that they believed they observed Brandon with a firearm or any other weapons at any other point during the four hours that he was in the vehicle. (PAMF-8). No officer saw Brandon point the alleged firearm at anyone or make any movements that made them believe Brandon intended to harm anyone. (PAMF-9). Moreover, Brandon was never observed making any aggressive or threatening movements during the incident. *Id*.

### B.  *Ms. Lopez was on Scene for the Entire Incident*

Shortly after Brandon's vehicle became stuck, Brandon's mother, Johanna Lopez, as well as several other family members, arrived on scene and congregated approximately one block from Brandon's car. (PAMF-10). Ms. Lopez stood just on the other side of the police perimeter, as close as she could legally be to her son and could see the intersection and at least three police cars and an armored vehicle. *Id*. Ms. Lopez knew that her son was in the intersection and that he was surrounded by

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

officers. (PAMF-11). Ms. Lopez remained on scene for the duration, pleading with officers to allow her to speak to her son. (PAMF-12).

### C. *Anaheim SWAT Took Over the Scene*

Several hours later, the Anaheim SWAT team, including the Defendant Officers, arrived on scene. (PAMF-13). At this time at least two additional armored vehicles were brought in to further surround the vehicle. (PAMF-14). Upon arriving on scene, the Defendant Officers and the rest of the SWAT team met to discuss their tactics. (PAMF-15). The Defendant officers knew that when they forced Brandon out of the car that his only potential avenue of escape was through the police perimeter. (PAMF-16). The Defendant officers also discussed the terrain of the construction zone and knew that it would force Brandon to zigzag to avoid the obstacles. (PAMF-17). The Defendants knew that these could be potential problems regardless of whether Brandon was armed, thus the plan was for less lethal to begin firing to subdue Brandon before he reached the perimeter to avoid the use of lethal force. *Id*. Law enforcement also planned to deploy the police service dog off lead if he approached the perimeter to ensure the officers could safely take Brandon into custody. *Id*. Lethal force was designated as cover. *Id*.

### D. *There was No Need to Force Brandon from his Vehicle*

Ms. Lopez was informed by an officer that law enforcement would be deploying a flashbang into Brandon's vehicle to attempt to get him to exit the car. (PAMF-21). Ms. Lopez immediately started crying. *Id*. Prior to the flashbang being deployed, Brandon had been sitting calmly, had not engaged in any threatening or assaultive conduct, and was completely surrounded by armed officers, including the City of Anaheim SWAT Team, and armored vehicles. (PAMF-22). Each of the Defendant Officers was armed with deadly force, some with handguns, others with rifles. (PAMF-23). In addition to lethal cover, the less lethal 40 mm launcher, police service dog, and a ballistic shield were staged with the Defendant Officer, hidden behind one of the armored vehicles. (PAMF-24).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

1   Shortly after Ms. Lopez was informed of the flashbang, at approximately
2   10:00 pm, law enforcement deployed the flashbang and smoke bomb into Brandon's
3   vehicle with the intent to force him to exit. (PAMF-25). The flashbang set off two
4   audible explosions. (PAMF-26). There were no exigent circumstances or other
5   legitimate law enforcement objectives that required the removal of Brandon at that
6   time. (PAMF-27). In fact, the Defendant Officers had been hiding behind the
7   armored vehicle for almost an hour prior to shots being fired and no assaultive or
8   threatening behavior by Brandon was reported or observed. (PAMF-28). By forcing
9   Brandon out of the car, the Defendants forced an unnecessary confrontation and
10  escalated the situation. *Id*. Moreover, it was clear that Brandon was in crisis as he
11  was seen crying in the vehicle. (PAMF-29).

12      E.  *Brandon was Not Armed yet He was Shot Over Thirty Times*

13      Brandon exited his vehicle holding only a small bag containing a plastic water
14  bottle held down at his side. (PAMF-30). As Brandon exited, he began to jog in a
15  line parallel to where the Defendant Officers were standing. (PAMF-31). The
16  Defendant Officers were still hidden behind an armored vehicle and there were
17  several bright lights pointing directly at Brandon, obfuscating their location.
18  (PAMF-32). As Brandon exited the car, several officers began simultaneously
19  yelling, including "hands up" and "go, go, go". (PAMF-33).

20      As Brandon moved forward, he was not looking in the direction of the
21  Defendant Officers. (PAMF-34). When Brandon did look towards the lights, his
22  hands were down by his side, moving only with the natural movement of his body.
23  (PAMF-36). As Brandon crossed the tracks on the ground, his path of travel was
24  blocked by a car and construction equipment, thus he changed direction slightly to
25  attempt to run past the car and toward the open street. (PAMF-37). He was not
26  running at the officers, lunging, nor making aggressive movements towards anyone.
27  (PAMF-37). Brandon never raised, swung, or pointed the bag at anyone. *Id*. Despite
28  Brandon not presenting an immediate threat that would justify the use of deadly

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR
PARTIAL SUMMARY JUDGMENT**

force, the defendants failed to follow their plan to use less lethal force first and did not utilize any of the options available to them. (PAMF-39).

Instead, within four seconds of Brandon exiting his vehicle, all four of the Defendant Officer's fired their guns at Brandon multiple times, spraying Brandon in a hail of gunfire. (PAMF-39). Brandon immediately started falling when the first shot struck him and hit the ground unresponsive, still, and bleeding profusely. (PAMF-40). Instead of providing medical care for Brandon as laid bleeding out on the cold pavement, officers fired a less lethal round at him approximately two minutes later. (PAMF-41). Brandon did not move. Id. After searching Brandon, medical attention was summoned, and he was pronounced dead on scene at approximately 10:11 pm. (PAMF-42). Brandon, who was unarmed during the entire incident, was shot in the back four times, the right side eight times, the chest six times, and the right arm, hand, and shoulder area twelve times, for a total of at least 30 gunshot wounds. (PAMF-43).

### F. *Ms. Lopez Heard it All and Knew her Son had been Shot*

Ms. Lopez was still standing approximately one block away when her son was shot. (PAMF-44). Ms. Lopez heard both the flashbang explosions and the gunshots from where she stood. Id. Ms. Lopez knew the first sounds were flashbangs because she had been told that they would be deployed shortly before, and they sounded like explosions or fireworks. (PAMF-45). Ms. Lopez thereafter heard the gunshots from the intersection. (PAMF-46). Ms. Lopez immediately "knew what gunshots meant" and knew that her son had been shot by the Defendant Officers. (PAMF-47). Ms. Lopez immediately fell to the ground Ms. Lopez immediately fell to the ground and began screaming. (PAMF-48). Ms. Lopez remained on scene until approximately 2:00 am when law enforcement confirmed that Brandon had died as a result of the gunfire. (PAMF-49).

As a result of the Incident, Ms. Lopez was diagnosed with Post Traumatic Stress Disorder and continues to experience vivid flashbacks of the sounds of

gunshots. (PAMF-50). Mr. Lopez has sought treatment for her emotional damages, including therapy and medication. *Id.* Ms. Lopez also continues to experience depression symptoms. (PAMF-51). In addition, Plaintiffs lost their only son and will forever be deprived of his love, companionship, support, and guidance. (PAMF-52).

## III.   ARGUMENT

### A. STANDARD OF REVIEW

Summary judgment may be granted only when, drawing all inferences and resolving all doubts in favor of the nonmoving party, there is no genuine dispute as to any material fact. Fed. R. Civ. P. 56(a). A fact is material when it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* It is well-established in the Ninth Circuit that "summary judgment ... in excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir.2002). In cases involving deadly force, Court's must ensure that Defendant officers are "not taking advantage of the fact that the witness most likely to contradict [their] story—the person shot dead—is unable to testify." *Scott v. Henrich*, 39 F.3d 912, 915 (9th Cir.1994).

In deciding a summary judgment motion, the court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. . at 255. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge…ruling on a motion for summary judgment…" *Id.* To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. *Id.* It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987) (internal citation omitted). "The mere existence of video footage of the incident does not foreclose a genuine factual

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

dispute as to the reasonable inferences that can be drawn from that footage." *Vos v. City of Newport Beach*, 892 F.3d 1024, 1028 (9th Cir. 2018) (citing *Scott v. Harris*, 550 U.S. 372, 380 (2007); see also  *Branscum v. San Ramon Police Dept.*, 606 Fed.Appx. 860, 862 (9th Cir. 2015) (holding where video footage is "susceptible to more than one interpretation" summary judgment may not be appropriate.)

In moving for summary judgment, Defendants rely on interpretations of the objective evidence that favor them, which this Court is constrained from doing. Plaintiffs maintain there are several disputed facts that must be determined by a jury and that summary judgment is not appropriate. Before this Court can decide whether the Defendant Officers' use of force was appropriate, the following questions of material fact must be decided by a jury: (1) whether it was reasonable for the Defendant Officers to mistake the soft bag for a gun; (2) whether Brandon made any aggressive movements with the object that would cause a reasonable officer to believe he posed an immediately threat; (3) whether any perceived movement of the object was a natural movement as he was jogging; (4) whether Brandon posed an imminent threat of death or serious bodily harm to others if not immediately apprehended; and (5) whether Brandon posed an imminent threat of death or serious bodily injury to anyone at the time the shots were fired.

## B. FOURTEENTH AMENDMENT

Parents and children have a Fourteenth Amendment liberty interest in each other's "companionship and society." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010). Official conduct that "shocks the conscience" and deprives a parent or child of that interest "is cognizable as a violation of due process." *Wilkinson*, 610 F.3d at 554. "[I]t is the intent to inflict force beyond that which is required by a legitimate law enforcement objective that 'shocks the conscience' and gives rise to liability under § 1983" involving excessive force. *Porter v. Osborn*, 546 F.3d 1131, 1140 (9th Cir. 2008).

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

The primary legal question under this standard is whether it can be met by a showing of deliberate indifference, or whether the plaintiff must instead show a purpose to harm for reasons unrelated to legitimate law enforcement objectives. *Porter*, 546 F.3d at 1137. If the circumstances were such that actual deliberation was practical, liability may stem from an officer's deliberate indifference, otherwise the purpose to harm standard applies. *Id.* at 1138.

On summary judgment, a court may only determine as to which standard applies only <u>if</u> the undisputed facts clearly point to one standard or the other. *See Bui v. City & Cnty. of S.F.*, 61 F. Supp. 3d 877, 901 (N.D. Cal. 2014) (quoting *Duenez v. City of Manteca*, 2013 WL 6816375, at * 14 (E.D. Cal. Dec. 23, 2013)). "But '[b]y its nature, the determination of which situation [the officer] actually found himself in is a question of fact for the jury, so long as there is sufficient evidence to support both standards.'" *Id.* (quoting *Duenez*, 2013 WL 6816375, at *14).

### 1. THE DEFENDANT OFFICERS HAD TIME TO DELIBERATE

"Deliberation" for the purposes of the "shocks the conscience" test is not a literal concept and is not necessarily tied to the amount of time allowed for consideration before action." *Porter*, 546 F.3d at 1139; see e.g. *Robertson v. Cnty. of Los Angeles*, No. CV1602761BROSKX, 2017 WL 5643179, at *11 (C.D. Cal. Oct. 17, 2017) (holding a reasonable jury can find that actual deliberation was possible when the subject possessed a gun but had not pointed or raised the weapon at anyone). "[T]he heightened purpose-to-harm standard applies [*only*] where a *suspect's* evasive actions force the officers to act quickly." *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir. 2010) (emphasis added).

Here, it was not the actions of Brandon that caused a situation where the Defendant Officers felt forced to act quickly, but the actions of law enforcement. Prior to the flashbang detonation, Brandon had been sitting calmly in the vehicle for almost four hours. He had not taken any aggressive or threatening actions for the duration and was seen crying at various points. Though there had been a single report

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

of an officer believing they may have seen a gun at approximately 5:00 pm, none of the other officers on scene ever saw a gun nor was the alleged gun ever seen again.

Regardless, it is undisputed that Brandon was not armed. When Brandon exited the vehicle, he was holding only a soft bag with a plastic water bottle inside. Even if the Defendant Officers argue that they believed the bag was some kind of weapon, this would be an unreasonable mistake of fact as SWAT officers are trained in weapon recognition, the bag looks nothing like a gun or any kind of dangerous weapon, and Brandon never raised the bag or made any threatening movements. Moreover, even if a jury determined that Defendants reasonably mistook the bag for a gun, the officers still had time to deliberate as the video clearly shows that Brandon had not pointed or raised the object at anyone prior to shots being fired. *See Robertson,* 2017 WL 5643179, at *11.

The Defendants also argue that Brandon ran at the Defendant Officers thereby creating a situation where deliberation was not possible. This argument too falls flat. The entire encounter was captured on several officers' body worn cameras. The videos clearly show that Brandon was not running at the Defendant Officers but was rather attempting to run out of the construction area. The Defendant Officers were obscured in darkness, hidden behind a large, armored vehicle. There were several bright lights pointing at Brandon which further obscured the location of the Defendant Officers and made it unlikely that Brandon would be able to see them. Even though Brandon did change his direction as he ran, he was never running at the Defendant Officers, and he made no movements that a reasonable officer would perceive as threatening.

Accordingly, this Court should apply the deliberate indifferent standard. In the alternative, this Court should not decide which standard applies at this time as there are several disputed facts which must be decided prior to the determination regarding actual deliberation and Plaintiff can make the requisite showing under either standard.

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR
PARTIAL SUMMARY JUDGMENT**

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**2. THE DEFENDANT OFFICERS WERE DELIBERATELY INDIFFERENT**

The Ninth Circuit has found that natural movement of an object in someone's hand, even if that object is a firearm, caused by turning is not aggressive and does not justify the use of deadly force. *See Estate of Lopez v. Gelhaus,* 871 F.3d 998, 1008-17 (9th Cir. 2017) (holding a reasonable jury could find that a perceived gun moving naturally with the suspect as they turned towards the officers was not an aggressive, furtive, or harrowing movement justifying the use of deadly force)

Plaintiffs are likely to be successful on this claim as shooting an unarmed person thirty times who has made no threatening actions or utterances, was just forced from their vehicle by a flash bang grenade and was attempting to get away from the explosion is clearly deliberately indifferent. Brandon did not pose a threat to anyone on scene when he was brutally gunned down by the four Defendant Officers.

This is especially true as the Defendant Officers had several other alternative measures at their disposal, which the plan was to utilize first, that would have obviated any need for deadly force, including a 40 mm less lethal launcher, a K9 officer, and tasers. By forgoing all of the options at their disposal and defaulting to deadly force, the Defendant Officers were clearly deliberately indifferent as they knew shooting him over thirty times would surely cause serious bodily injury and could lead to death.

In addition, the amount of force used against Brandon shocks the conscience. Brandon, who was unarmed and had not threatened anyone, suffered over thirty (30) gunshot wounds, including four shots to the back and twelve shots to the right side of his torso. Even assuming, *in arguendo*, that a jury determined the Defendants mistake of fact regarding the firearm was reasonable, thirty shots would still be deliberately indifferent as the video makes clear the Brandon immediately began to fall after the first shot was fired. As Brandon was shot in the back multiple times, he

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

was either shot while running away from an officer or while he was on the ground, both of which indicate an intent to harm.

Moreover, after this egregious show of force, Brandon was subjected to additional force when a 40 mm less lethal launcher was fired at him as he lay bleeding and unmoving on the pavement. This is clear deliberate indifference. This amount of force clearly evidences an "intent to inflict force beyond that which is required by a legitimate law enforcement objective" and thus 'shocks the conscience' under any standard. *Porter*, 546 F.3d at 1140.

By killing Brandon, the Defendant Officers irrevocably violated Plaintiffs fight to a familial relationship with their only son. Plaintiffs will be forever deprived of their son's companionship, society, comfort, love, and guidance.

### 3. THE DEFENDANT OFFICERS ACTED WITH A PURPOSE TO HARM

Even if, *in arguendo*, a jury decides the officers did not have time to deliberate, a reasonable jury could still find that the Defendant Officers acted with a purpose to harm unrelated to a legitimate law enforcement purpose.

#### i. DECEDENT WAS UNARMED AND DID NOT POSE A THREAT

An officer acts with a purpose to harm when they use unnecessary deadly force, which is using deadly force against a person who does not pose an immediate threat of death or serious bodily injury. *See e.g. Barragan v. City of Eureka*, No. 15-CV-02070-WHO, 2016 WL 4549130, at *5 (N.D. Cal. Sept. 1, 2016) (denying summary judgment and holding that a reasonable juror could find that the use of deadly force shocked the conscience under either standard if they found that the subject did not reach for his waistband or they found that the movement was caused by the subject attempting to comply with the inconsistent commands being given), *Ramirez v. Cnty. of San Diego*, No. 06 CV 1111JM (JMA), 2009 WL 1010898, at *1-8 (S.D. Cal. Apr. 15, 2009) (denying summary judgment and holding reasonable juror could find officers acted with purpose to harm when he shot a fleeing subject

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

while running and on the ground if jury believed subject did not make furtive gesture), *Zion v. Cnty. of Orange*, 874 F.3d 1072, 1077 (9th Cir. 2017) (holding that a reasonable jury could find that an officer acted with a purpose to harm when they stomped on a subject after the subject have been shot multiple times).

In *F.C.*, a local gang enforcement team received a tip from a father that his son had a gun in a convenience store. *F.C. ex rel. Rios v. Cnty. of Los Angeles*, No. CV 10-169 CAS RZX, 2010 WL 5157339, at *5-6 (C.D. Cal. Dec. 13, 2010). Upon arriving at the store, two officers contacted a man who matched the description and commanded him to get on his knees. Id. The subject initially complied but then began to stand up again. Id. It is undisputed that the subject had a firearm in his pocket during the incident, but it is disputed whether he reached for the gun as he began to stand up. Id. Both officers shot as the man was standing up, striking the man in the back and killing him. Id. The Court, applying the purpose to harm standard, denied summary judgment and held that a reasonable juror could find that the officers acted with a purpose to harm by shooting the man in the back if he did not reach for the gun during the encounter, i.e. make any threatening, aggressive, or harrowing movements. Id.

This case is similar to *F.C.* in many ways but it differs in one keyway: the decedent in *F.C.* was actually armed while Brandon was not. There are several facts from which a reasonable juror could conclude that the Defendants acted with a purpose to harm, including but not limited to Brandon being unarmed, not making any threatening gestures, not making any furtive or reaching gestures, Brandon suffering thirty gunshot wounds (as opposed to two in *F.C.,* seven in *Barragan*), including in the back, the continued shots after Brandon had started to fall and had hit the ground, and the final, entirely unnecessary 40 mm less lethal shot. Moreover, most of the above facts are disputed and thus must be decided by a jury.

Though the interaction was caught on video, Brandon's actions as he left the car and the inferences to be drawn therefrom are disputed thus summary judgment

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

is inappropriate as the disputed facts are critical to the determination of whether Defendants acted with a purpose to harm. *See Vos*, 892 F.3d at 1028, *Scott*, 550 U.S. at 380, *Branscum*, 606 Fed.Appx. at 862 (9th Cir. 2015). Thus, when viewing the facts in the light most favorable to Plaintiffs, a reasonable juror could find the Defendants acted with a purpose to harm.

### ii. Defendants Created the Perceived Emergency

While an officer generally does not act with a purpose to harm when "responding to an emergency," a reasonable factfinder might conclude the officer does intend to harm when he "creates the very emergency he then resorts to deadly force to resolve...." *Bingue v. Prunchak*, 512 F.3d 1169, 1177 (9th Cir.2008) (quoting *Porter,* 546 F.3d at 1141 (stating in dicta that on remand the lower court is to consider that the subjects attempt to drive away, the action that defendants argued triggered their use of deadly force, may have been a normal effort to escape further pepper spraying by the officer, making the an active participant in triggering the perceived emergency."))

Here, the perceived emergency that the Defendant Officers faced was created in part by their own doing. Though the Defendant Officers had a legitimate interest in arresting Brandon after the car chase and standoff, there was no reason to escalate the situation by detonating a flashbang and gas cannister into Brandon's car to force him out at that moment. Other than a single report that an officer believed they saw a firearm mere minutes into the four-hour encounter, no one observed Brandon with a firearm or make any threatening movements, gestures, or utterances. Prior to the flashbang detonation, Brandon had been seen crying in the back seat of the vehicle. There was no reason to force Brandon out of the car and into the dangerous situation the Defendants knew awaited him. The Defendants had already discussed that when Brandon exited the vehicle that the terrain would naturally drive him into the perimeter. Even with all this knowledge, the Defendants still forced the unnecessary

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

escalation of the Incident by detonating the flashbang and gas cannister to force Brandon from the car and into the line of fire.

Moreover, though the Defendants had an interest in taking Brandon into custody safely, they did not have a legitimate interest in ending the situation quickly when Brandon was completely contained and had not exhibits any threatening behavior in over four hours. *See Vos*, 892 F.3d at 1028 (holding the government's interest in using force is lessened when a suspect is surrounded by armed officers).

Finally, as stated more fully *supra.*, the amount of force used against Brandon when he was unarmed and had made no threatening gestures that would cause a reasonable officer to believe he posed an immediate threat to anyone was clearly beyond that which was required to take Brandon into custody. *Porter*, 546 F.3d at 1140.

Accordingly, this Court should deny summary judgment and allow the case to proceed to trial.

### 4. MISTAKES OF FACT MUST BE DETERMINED BY A JURY

Where "an officer's particular use of force is based on a mistake of fact, we ask whether a reasonable officer would have or should have accurately perceived that fact." *See S.R. Nehad*, 929 F.3d at 1133 (quoting *Torres v. City of Madera*, 648 F.3d 1119, 1124 (9th Cir. 2011)). "[W]hether the mistake was an *honest* one is not the concern, only whether it was a *reasonable* one." *Id.* at 1127. Whether a mistake of fact is reasonable is a question of fact for the jury. See Torres, 648 F.3d at 1124, Lopez, 871 F.3d at 1008-11; *See also Santos*, 287 F.3d at 855 n.12 (finding it premature to decide qualified immunity "because whether the officers may be said to have made a 'reasonable mistake' of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom")

Here, the Defendant Officers made two mistakes of fact: that the bag in Brandon's hand was a gun and that he pointed the bag at the officers in a way that could reasonably be perceived as a threat. Both facts are critical to the determination

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

of whether the Defendant Officers acted with a purpose to harm and must be decided by a jury. Thus, summary judgment is inappropriate at this time.

In addition, there are many facts, including but not limited to those below, from which a reasonable juror could find the mistakes were not reasonable. First, it is undisputed that Brandon was not armed with any weapons. Second, the object was a soft bag with a plastic water bottle inside, which looked nothing like a firearm. The Defendants are all seasoned SWAT officers who are well trained in recognizing weapons and thus knew, or at least should have known, that the object was not a gun. Third, the only report that any officer saw Brandon with a firearm prior to the flashbang deployment was four hours before the Defendants shot him. Finally, Brandon did not make any threatening gestures with the object that would cause the officers to believe was an immediate threat, regardless of what the object was.

Accordingly, summary judgment is inappropriate at this time.

### 5. QUALIFIED IMMUNITY SHOULD BE DENIED

In determining whether a government official is entitled to qualified immunity, this Court must determine whether: (1) the facts that a plaintiff has alleged or proved show a violation of a constitutional right, and (2) the right at issue was clearly established at the time of the defendant's alleged misconduct. See *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). An officer's actions violate a clearly established right when, at the time of the challenged actions, "'the contours of a right are sufficiently clear' that every 'reasonable official would have understood that what he is doing violates that right.'" *Lopez*, 871 F.3d at 1017 (alterations omitted) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).

### i. QUALIFIED IMMUNITY IS PREMATURE

As an initial matter, summary judgment, including qualified immunity, should not be granted where the reasonableness of a "mistake of fact or law may depend on the jury's resolution of disputed facts and the inferences it draws therefrom." *Santos v. Gates*, 287 F.3d 846, 853 (9th Cir. 2002); *see also Barragan*, 2016 WL 4549130,

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR
PARTIAL SUMMARY JUDGMENT**

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

at *5 (denying qualified immunity on grounds that jury must first determine whether mistakes of fact re furtive movements were reasonable), *F.C.*, 2010 WL 5157339, at *5-6 (denying qualified immunity on grounds that jury first needed to determine reasonableness of officer's mistakes of fact). As there are several disputed facts and mistakes of fact, outlined above, the issue of qualified immunity is premature. The jury must first be permitted to decide these issues before qualified immunity is ripe.

### ii. IT WAS CLEARLY ESTABLISHED AT THE TIME OF THE INCIDENT THAT DEADLY FORCE WAS NOT APPROPRIATE

Even so, it is clearly established that an officer violates the Fourteenth Amendment Due  Process when they use deadly force against a subject who poses no immediate threat. *See A.D. v. California Highway Patrol*, 712 F.3d 446, 451, 458 (9th Cir. 2013); *see also e.g. N.E.M. v. City of Salinas,* 761 Fed.Appx. 698, 699-700 *(9th Cir. 2019)* (collecting cases showing it was clearly established prior to 2019 that "officers may not use deadly force against a person who is armed but cannot reasonably be perceived to be taking any furtive, harrowing, or threatening actions."), *Lopez*, 871 F.3d at 1020 (holding the law is clearly established that an officer cannot use deadly force against a subject armed with a gun who does not make a threatening, aggressive, or harrowing gesture), *George v. Morris*, 736 F.3d 829, 838 (9th Cir. 2013) (holding a reasonable jury could find that it was unreasonable to shoot suspect when his gun was trained at the ground), *Harris v. Roderick,* 126 F.3d 1189, 1204 (9th Cir. 1997*)* (holding "Law enforcement officials may not kill suspects who do not pose an immediate threat to their safety or to the safety of others simply because they are armed."); *Curnow By & Through Curnow v. Ridgecrest Police*, 952 F.2d 321, 325 (9th Cir. 1991) (rejecting application of qualified immunity and holding "the police officers could not reasonably have believed the use of deadly force was lawful because Curnow did not point the gun at the officers and apparently was not facing them when they shot him the first time.").

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

Similarly, it is clearly established police officers may not use deadly force indiscriminately to prevent the escape of a felony suspect no matter the circumstances but rather, may only do so if the officer "has probable cause to believe that the suspect poses a risk of serious physical harm, either to the officer or to others...." *Tennessee v. Garner*, 471 U.S. 1, 11 (1985).

Viewing the facts in the light most favorable to Plaintiff, Brandon had been sitting in the car unarmed for over four hours without engaging in any threatening conduct. He was then unnecessarily forced from the vehicle by a flashbang and gas cannister, into a line of armed officers hidden behind lights and an armored vehicle. He made no threatening, aggressive, or furtive gestures as he attempted to run to the roadway. Even assuming, *in arguendo*, that the officers reasonably believed he was armed, it was clearly established that the use of deadly force was not permitted under these circumstances as Brandon did not make any threatening, aggressive, or harrowing gestures with the bag. As the mistake was not reasonable, under the case law cited above, it was clearly established that the Defendants use of deadly force was unconstitutional.

Accordingly, qualified immunity should be denied.

### iii. DEFENDANTS' AUTHORITY IS DISTINGUISHABLE

*Gonzalez v. City of Anaheim*, 747 F.3d 789, 798 (9th Cir. 2014) involved an officer climbing into the passenger seat of a subject's car after the subject refused to show an officer what he had in his hand. The subject drove off and refused to stop and the officer shot him. The facts of *Gonzalez* have no similarity to this case.

*Reynolds v. Cnty. of San Diego*, 858 F. Supp. 1064, 1072 (S.D. Cal. 1994) involved an officer shooting a subject one time during a physical fight where the subject was continuously attempting to stab the officer. The facts of *Reynolds* have no similarity to this case which involves an unarmed person and several mistakes of fact that must be determined by a jury. In addition, the cases the Court collected

specifically address situations involving armed subjects in close proximity to officers whereas this case involves an unarmed man.

*Easley v. City of Riverside*, 89 F.3d 851, 857 (9th Cir. 2018) involved a subject who, while running from officers, pulled out a gun and threw it like a frisbee. The officers fired in response to the subject pulling out the gun. Again, the facts of *Easley* are inapposite to this case as *Easley* was armed and running away, whereas Brandon was unarmed and surrounded by officers with a variety of tools to take him into custody.

## C. NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS ("NIED")

Under California law, public employees "are statutorily liable to the same extent as private persons for injuries caused by their acts or omissions, subject to the same defenses available to private persons." *Hayes v. Cnty. of San Diego*, 57 Cal. 4th 622, 628 (2013). In addition, "public entities are generally liable for injuries caused by the negligence of their employees acting within the scope of their employment." Id.

"Under established law, police officers have a duty to use reasonable care in deciding to use and in fact using deadly force. An officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect." *Brown v. Ransweiler*, 171 Cal.App.4th 516, 534 (2009). "[S]tate negligence law, which considers the totality of the circumstances surrounding any use of deadly force, is broader than federal Fourth Amendment law, which tends to focus more narrowly on the moment when deadly force is used." *Hayes*, 57 Cal.4th at 639. Importantly, negligence "liability can arise if the tactical conduct and decisions leading up to the use of deadly force show, as part of the totality of circumstances, that the use of deadly force was unreasonable." *Id*. at 632.

A Plaintiff claiming NIED must show that they: (1) are closely related to the victim; (2) were present at the scene of the incident at the time it occurred and was aware that it is causing injury to the victim and, (3) as a result suffers emotional

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

distress beyond that which would be anticipated in a disinterested witness. *Thing v. La Chusa*, 48 Cal.3d 644, 647 (1989). "To satisfy the second *Thing* requirement the plaintiff must experience a contemporaneous sensory awareness of the causal connection between the defendant's infliction of harm and the injuries suffered by the close relative." *Fortman v. Forvaltningsbolaget Insulan AB*, 212 Cal.App.4th 830, 836 (2013).

In their Motion, Defendants only argument for summary judgment on Ms. Lopez's NIED claim is that she did not have "contemporaneous awareness" of the death of her son. Defendants did not raise any arguments anywhere in their brief regarding whether the Defendant Officers acted negligently. However, Plaintiffs contend that the facts clearly show that the Defendant Officers were negligent both in their pre-use of force tactics in creating the dangerous situation and their use of force.

Addressing Defendants' only live argument, that Ms. Lopez's claim fails because she was not contemporaneously aware that the shots heard were causing injury and/or death to her son, Defendants argument lacks merit under the law and there are disputed issues of material fact that must be determined by a jury. First, it is undisputed that Ms. Lopez was present at the scene. Ms. Lopez was standing immediately on the other side of the police line and was as close to the Incident as she could legally be. From where she stood, Ms. Lopez could see the intersection where Brandon's car was immobilized, the police presence in the intersection, and the armored vehicles. Second, it is indisputable that Ms. Lopez contemporaneously perceived the force as she heard the flashbang explosions and the barrage of gunfire. *See Ko v. Maxim Healthcare Servs., Inc.,* 58 Cal. App. 5th 1144 (2020) (holding parents of child were "present" for purposes of NIED when they viewed live nanny-cam footage of caregiver assaulting their child), *Krouse v. Graham,* 19 Cal. 3d 59, 76 (1977) (holding that contemporaneous awareness does not require visual perception of the incident).

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard, Suite 1000
Beverly Hills, California 90212

Finally, Ms. Lopez testified at her deposition that when she heard the shots, she collapsed to the ground and knew that her son had been shot. Though she could not confirm this until later, at the moment the shots were fired, Ms. Lopez truly believed that her son had been shot because she "knew what gunshots meant."

The facts also support Ms. Lopez's awareness that her son was being harmed. Ms. Lopez knew that her son was in the car that was stuck and that he was surrounded by armed officers for many hours. Ms. Lopez was told specifically that the officers would be setting off an explosive device to attempt to get Brandon out of the car and into the line of fire of those armed officers. Ms. Lopez then perceived the explosion in the vehicle that her son was in and heard the immediate hail of bullets. Ms. Lopez also testified that she "knew what gunshots meant" and collapsed with the knowledge that her son was dead or seriously injured. This is sufficient to establish contemporaneous perception even though she only heard the shots being fired and did not actually see Brandon being injured.

In *Wilks v. Hom,* 2 Cal. App. 4th 1264, 1267 (1992), a parent brought a NIED claim after her home exploded and burnt down with her child inside. The court held the parent's claim was appropriate because "because the [parent] was contemporaneously aware that the explosion was causing the injuries although [they] did not actually see or hear [their] [child] being injured." The Court explained that even though the parent did not see the explosion, or their child being injured, directly because the parent felt the force of the explosion and knew their child was in the home when the explosion occurred there was sufficient evidence for the jury to find contemporaneous awareness thus the claim survived. *Id.*

This case is very similar to *Wilks.* Like *Wilks,* Ms. Lopez did not visually perceive the action that caused harm to her son, in this case the barrage of bullets, but she perceived it through other senses, in this case audibly. Moreover, though Ms. Lopez did not visually perceive the bullets striking Brandon, like in *Wilks,* she knew he was in a car surrounded by armed officers and that the officers would be setting

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR
PARTIAL SUMMARY JUDGMENT**

off an explosive device to try to force him from the car prior to hearing the explosion. Once she heard the explosion and the accompanying gunshots, she knew that her son was being shot.

Accordingly, summary judgment should be denied.

## IV.   <u>CONCLUSION</u>

Given the foregoing, this Court should deny Defendants' Motion for Summary Judgment.

Dated:  July 22, 2024          BURRIS, NISENBAUM, CURRY & LACY LLP


                               By: /s/ *Lena Andrews*
                                    DeWITT M. LACY
                                    JOHN L. BURRIS
                                    JULIA N. QUESADA
                                    LENA P. ANDREWS
                                    Attorneys for Plaintiff,
                                    Antonio Lopez, Johanna Lopez, &
                                    S.L. by and through his guardian ad
                                    litem Rocio Flores

### Local Rule 11-6.2 Certificate of Compliance

The undersigned, counsel for record for Plaintiffs, certifies that this brief contains 6999 words, which complies with the word limit of L.R. 11-6.1.


Dated:  July 22, 2024          BURRIS, NISENBAUM, CURRY & LACY LLP


                               By: /s/ *Lena Andrews*
                                    LENA P. ANDREWS

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR PARTIAL SUMMARY JUDGMENT**

BURRIS, NISENBAUM, CURRY & LACY LLP
9701 Wilshire Boulevard,  Suite  1000
Beverly Hills, California 90212